IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4652

UNITED STATES OF AMERICA,

*Appellee*,

v.

OMAR VILLARREAL SILVA,
a/k/a Nolberto Ruiz Trinidad, a/k/a Nolberto Trinidad Ruiz,

*Appellant*.

Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond
*The Honorable M. Hannah Lauck, District Judge*

BRIEF OF THE UNITED STATES

| | |
|---|---|
| G. Zachary Terwilliger<br>United States Attorney | Richard D. Cooke<br>Assistant United States Attorney<br>919 East Main Street, Suite 1900 |
| S. David Schiller<br>Assistant United States Attorney | Richmond, Virginia 23219<br>804-819-5400 |

*Attorneys for the United States of America*

**Table of Contents**

**Page**

Table of Authorities ................................................................................................ iii

Introduction ............................................................................................................. 1

Issues Presented ...................................................................................................... 7

Statement of the Case .............................................................................................. 7

Summary of Argument ........................................................................................... 13

Argument ............................................................................................................... 15

The district court erred in finding that 8 U.S.C. § 1225(b)(1)(D) is
unconstitutional but correctly denied defendant's motion to dismiss the
indictment ................................................................................................... 15

A.      Standard of Review ........................................................................... 15

B.      Analysis ............................................................................................ 15

1.  Defendant fails to show any due process violation in his
removal order of November 20, 2014 ................................................ 19

2.  Defendant fails to establish any prejudice from his alleged
due process violations because he did not establish a reasonable
probability he would have been granted withdrawal of his
application for admission ................................................................... 24

3.  Because defendant fails to establish any prejudice from
the alleged due process violations from his removal
on November 20, 2014, any constitutional flaw in
§ 1225(b)(1)(D) is harmless, and this Court should
decline to reach the constitutionality of the statute .......................... 36

i

       4.  Section 1225(b)(1)(D) is constitutional and bars review
of defendant's removal order on November 20, 2014 ........................38

Conclusion ......................................................................................................46

Statement Regarding Oral Argument ....................................................47

Certificate of Compliance ..........................................................................48

Certificate of Service ...................................................................................49

**Table of Authorities**

**Cases**

*Afanwi v. Mukasey*, 526 F.3d 788 (4th Cir. 2008) .....................................................21

*Appiah v. INS*, 202 F.3d 704 (4th Cir. 2000) ............................................................19

*Bonhometre v. Gonzales*, 414 F.3d 442 (3d Cir. 2005) ............................................20

*Bowrin v. U.S. I.N.S.*, 194 F.3d 483 (4th Cir. 1999)..................................................45

*Cruz v. Holder*, 321 F. App'x 280 (4th Cir. 2009) ...................................................22

*Dekoladenu v. Gonzales*, 459 F.3d 500 (4th Cir 2006) ............................................26

*Duldulao v. INS*, 90 F.3d 396 (9th Cir. 1996) ..........................................................43

*Escudero–Corona v. INS*, 244 F.3d 608 (8th Cir. 2001) ..........................................20

*Fiallo v. Bell*, 430 U.S. 787 (1977)........................................................................3, 39

*Figueroa v. INS*, 886 F.2d 76 (4th Cir. 1989)...........................................................24

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) ..................................................35

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)........................................................5, 36

*Hall v. U.S. I.N.S.*, 167 F.3d 852 (4th Cir. 1999).....................................................44

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1952).....................................................39

*INS v. Yueh-Shaio Yang*, 519 U.S. 26 (1996) ...........................................................19

*Jay v. Boyd*, 351 U.S. 345 (1956) .............................................................................19

*Jean v. Nelson*, 472 U.S. 846 (1985) .....................................................................5, 36

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ..........................................................43

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) ............................................................43

*Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953....................................................40

*Landon v. Plasencia*, 459 U.S. 21 (1982)........................................................ *passim*

*Leng May Ma v. Barber*, 357 U.S. 185 (1958)..........................................................26

*Lewis v. U.S. I.N.S.*, 194 F.3d 539 (4th Cir. 1999) ...................................................45

*Massis v. Mukasey*, 549 F.3d 631 (4th Cir. 2008) ....................................................22

*Munoz v. Ashcroft*, 339 F.3d 950 (9th Cir. 2003) .....................................................19

*Nishimura Ekiu v. United States*, 142 U.S. 651 (1892) .............................................40

*Oguejiofor v. Att'y Gen. of the United States*, 277 F.3d 1305 (11th Cir. 2002) ......20

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984 ..................................................41

*Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155 (1993) ....................................43

*Smith v. Ashcroft*, 295 F.3d 425 (4th Cir. 2002).......................................................19

*Spector Motor Serv. v. McLaughlin*, 323 U.S. 101 (1944)......................................5, 36

*Three Affiliated Tribes of Berthold Res. v. Wold Enr'g*, 467 U.S. 138 (1984) .........5

*Tovar-Landin v. Ashcroft*, 361 F.3d 1164 (9th Cir. 2004)......................................19

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018)...................................... 3, 38, 39

*U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950) ..........................................43

*U.S.A. v. Arredondo-Martinez*, 2011 WL 13196331 (C.D. Cal. 2011) ....................27

*United Sates v. Arredondo-Martinez*, 2011 WL 13196331 (C.D.Cal. 2011).........31

*United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950).........................40

*United States v. Aguirre–Tello*, 353 F.3d 1199 (10th Cir. 2004) (en banc).............20

*United States v. Armstrong*, 517 U.S. 456 (1996) ..........................................33

*United States v. Arredondo-Martinez*, 2012 WL 5505744 (9th Cir. 2012).............29

*United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011) ................ *passim*

*United States v. Barragan–Camarillo,* 2011 WL 5930388 (9th Cir. 2011)............30

*United States v. Bundy*, 392 F.3d 641 (4th Cir. 2004)..........................................32

*United States v. Caceres*, 440 U.S. 741 (1979) ..........................................19

*United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984) ..........................................33

*United States v. Calderon-Jimenez,* 637 F. App'x 295 (9th Cir. 2016) .................33

*United States v. Caro*, 597 F.3d 608 (4th Cir. 2010)..........................................32

*United States v. Chon*, 210 F.3d 990 (9th Cir. 2000) ..........................................33

*United States v. De Honta Garcia*, 519 F.3d 698 (7th Cir. 2008)..........................31

*United States v. El Shami*, 434 F.3d 659 (4th Cir. 2005) ................................. 17, 24

*United States v. Estrada*, 876 F.3d 885 (6th Cir. 2017) ..........................................20

*United States v. Garcia-Gonzalez*, 2013 WL 1562540 (S.D. Cal. 2013)................28

*United States v. Garcia-Gonzalez*, 791 F.3d 1175 (9th Cir. 2015) ........................25

*United States v. Grande*, 2013 WL 3190741 (S.D. Cal. 2013) ..............................28

*United States v. Kaixiang Zhu*, 854 F.3d 247 (4th Cir. 2017)..................................15

*United States v. Lopez-Collazo*, 824 F.3d 453 (4th Cir. 2016)..............................17

*United States v. Lopez-Garcia*, 449 F. App'x 587 (9th Cir. 2011) ........................29

*United States v. Lopez–Ortiz*, 313 F.3d 225 (5th Cir. 2002) ..................................20

*United States v. Lopez-Vasquez*, 227 F.3d 476 (5th Cir. 2000)................ 5, 6, 37, 43

*United States v. Luna-Magdelano*, 533 F. App'x 792 (9th Cir. 2013)....................29

*United States v. Mendoza-Alvarez*, 2013 WL 5741577 (S.D. Cal. 2013) ..............27

*United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).................................... *passim*

*United States v. Meraz-Olivera*, 472 F. App'x 610 (9th Cir. 2012).......................29

*United States v. Moreno-Tapia*, 848 F.3d 162 (4th Cir. 2017).............................17

*United States v. Ramos-Ramirez*, 128 F.Supp.3d 896 (D. Md. 2015).....................20

*United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014) ..................................36

*United States v. Reed*, 780 F.3d 260 (4th Cir. 2015) ........................................ 5, 6, 36

*United States v. Rojas-Pedroza*, 716 F.3d 1253 (9th Cir. 2012) .............................25

*United States v. Romero-Caspeta*, 2012 WL 4867708 (E.D. Mich. 2012) .............28

*United States v. Sanchez-Aguilar*, 719 F.3d 1108 (9th Cir. 2013) ..........................31

*United States v. Santiago–Ochoa*, 447 F.3d 1015 (7th Cir. 2006) ..........................20

*United States v. Segura-Del Real*, 83 F.3d 275 (9th Cir. 1996) ..............................28

*United States v. Silva*, 313 F. Supp. 3d 660 (E.D.Va. 2018) ....................................4

*United States v. Soto-Garcia*, 2017 WL 991106 (S.D.Cal. 2017)...........................26

*United States v. Torres-Medina*, 2018 WL 627114 (E.D.N.C. 2018).....................20

*United States v. Valdez-Nova*, 780 F.3d 906 (9th Cir. 2015) .................................25

*United States v. Wolf*, 860 F.3d 175 (4th Cir. 2017) ...............................................33

*Weatherford v. Bursey*, 429 U.S. 545 (1977)..........................................................33

*Zadvyas v. Davis*, 533 U.S. 678 (2001) ...................................................................40

## Statutes

18 U.S.C. § 1544 .............................................................................................. 2, 4, 10

18 U.S.C. § 3231 .....................................................................................................6, 38

8 U.S.C. § 1225(b)(1)(D) .................................................................................. *passim*

8 U.S.C. § 1326 ................................................................................................. *passim*

## Introduction

Defendant Omar Villarreal Silva attempted to enter the United States illegally on March 4, 1998, March 14, 1998, March 18, 1998, July 26, 1998, and July 28, 1998. A168, 170-71. In each of these five attempts, defendant was apprehended by United States Border Patrol Agents, processed as a voluntary return instead of being put in removal proceedings or prosecuted, and returned to Mexico. *Id.*

Undeterred by the leniency afforded him, defendant eventually succeeded in illegally entering the United States, and on August 19, 2000, police in Winston-Salem, North Carolina arrested defendant for discharging a firearm inside the city limits. *Id.* Defendant was later found guilty under the alias Nolberto Trinidad Ruiz, while using a false birthdate. A170-71; PSR ¶ 27. Less than a year later, on February 10, 2001, defendant was arrested again in Winston-Salem for robbery with a dangerous weapon and resisting an officer. *Id.* The robbery charge was dismissed, and defendant was convicted of resisting arrest under the name Nolberto Trinidad. A168; 170-71; PSR ¶ 27. Defendant's criminal conduct continued when, on December 3, 2007, he was arrested in Chesterfield County, Virginia for driving while intoxicated and for identity theft after he was found with a false social security card. A168-69; 170-71; PSR ¶ 28. He was convicted of DWI and identity theft, again under the alias Nolberto Trinidad Ruiz. *Id.* These

1

offenses were followed by second and third DWI convictions in 2009 and 2014 in Chesterfield County, with both convictions being under the alias Nolberto Trinidad-Ruiz.  A169; 170-71; PSR ¶ 29-30.   Following the 2014 DWI conviction, defendant was removed to Mexico on September 11, 2014.  A169; 171; PSR ¶ 31.

Approximately two months later, on November 20, 2014, defendant arrived at the U.S. border, presented another person's passport card, falsely stated that the card was his, and falsely claimed to be a U.S. citizen.  A171-72.  When a Customs and Border Protection officer discovered the passport was actually lost or stolen, defendant admitted the passport card was not his.  A171.  Rather than permitting defendant to depart voluntarily a fifth time, the border officer referred defendant for criminal prosecution.  A172.

Following his guilty pleas in the U.S. District Court for the Western District of Texas to attempted reentry after removal, 8 U.S.C. § 1326, and improper use of another's passport, 18 U.S.C. § 1544, defendant served 15 months' imprisonment and was removed on December 23, 2015.  A172-73.

But defendant illegally returned again, and on August 6, 2017, he was arrested in Chesterfield County, Virginia, for DWI, obstruction of justice, and driving on a suspended or revoked license.  A173.  This arrest led to his present prosecution for unlawful reentry under § 1326.  A173.

In response to the current prosecution, defendant sought to dismiss the § 1326 count by challenging the validity of his prior removal orders under *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), and § 1326(d). In ruling on this motion, the district court *sua sponte* invoked a statutory provision, 8 U.S.C. § 1225(b)(1)(D), that bars a federal court from reviewing the removal orders in certain cases where the aliens (a) are stopped at the border before entering the United States and (b) do not seek asylum or claim persecution.

The Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (citations omitted). *See also Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'") (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)).

But after raising § 1225(b)(1)(D) *sua sponte*, the district court concluded that the due process review recognized in *Mendoza-Lopez* for a § 1326 prosecution—where the Supreme Court analyzed a prosecution of an alien found within the United States—nevertheless mandates that § 1225(b)(1)(D) is

3

unconstitutional for arriving aliens who have no claim of asylum or persecution. At the same time, the district court acknowledged that, for the removal order to which § 1225(b)(1)(B) could apply here, defendant failed to show any prejudice from § 1225(b)(1)(B)'s bar to review.

As the district court agreed, at bottom, defendant's complaint was that, for the September 11, 2014 removal order, he might have sought to withdraw his application for admission, a step that the border patrol agents could have, in their sole discretion, permitted. But the district court found that defendant failed to "establish that he would have even *requested* withdrawal of application," *United States v. Silva*, 313 F. Supp. 3d 660, 679 (E.D.Va. 2018), and there was no basis to find that the agents would have chosen to let defendant withdraw his false application. Instead, after letting defendant depart voluntarily five times previously and then removing defendant following his string of criminal convictions, the executive branch chose, when defendant attempted to reenter illegally yet again, to prosecute and convict defendant of unlawful reentry under § 1326 and improperly using another's passport under § 1544. In the course of that prosecution, defendant conspicuously raised no challenge to the validity of his prior removal. As the district court itself agreed, defendant could not possibly establish prejudice for whatever conceivable constitutional due process right he might assert because he could have asked to depart voluntarily, and the executive

4

branch could have agree to that instead of pursuing the criminal prosecution that it did.

This Court has noted that "the principle of constitutional avoidance … requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary," and that principle applies where "any [asserted constitutional] error was harmless." *United States v. Reed*, 780 F.3d 260, 269 (4th Cir. 2015) (citation omitted). "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality … unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944). "Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Jean v. Nelson*, 472 U.S. 846, 854-55 (1985) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)). "This is a 'fundamental rule of judicial restraint.'" *Id.* (quoting *Three Affiliated Tribes of Berthold Reservation v. Wold Enr'g*, 467 U.S. 138, 157 (1984)).

The Fifth Circuit, which handles a particularly large volume of prosecutions under § 1326, has taken a similar harmlessness approach to the limitation on review in § 1225(b)(1)(D). *See United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000) (declining to rule on the constitutionality of § 1225(b)(1)(D) and noting that "section 1225(b)(1)(D) does not preclude the district court or this court

from determining that the requisites of a *Mendoza-Lopez* claim as asserted by Lopez-Vasquez are *not* met"). Nearly two decades later, the Fifth Circuit still has found it unnecessary to decide the constitutionality of § 1225(b)(1)(D).

The Ninth Circuit for its part has claimed that *Lopez-Vasquez* implicitly declared § 1225(b)(1)(D) unconstitutional. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 n.9 (9th Cir. 2011) ("*Lopez-Vasquez* is best read as implicitly holding that § 1225(b)(1)(D) is unconstitutional"). But in *Lopez-Vasquez*, the Fifth Circuit expressly stated, "We do *not* determine whether § 1225(b)(1)(D) … is unconstitutional." 227 F.3d at 486 (emphasis in original). While misreading *Lopez-Vasquez*, the Ninth Circuit went on to declare § 1225(d)(1)(D) unconstitutional in a case where the defendant "failed to show any prejudice resulting from the alleged procedural flaws in the proceedings that resulted in those orders." 655 F.3d at 1079.

This Court has properly declined, however, to reach constitutional questions that are harmless, *Reed*, 780 F.3d at 269, and *Reed* did not involve striking down an act of Congress on a subject matter where special deference is owed the legislative and executive branches, *Landon*, 459 U.S. at 32. Here, the district court plainly had jurisdiction over defendant's criminal case under 18 U.S.C. § 3231 and was deciding whether to recognize a possible constitutional claim in adjudicating a defense to criminal prosecution. Before a court takes the strong action of

invalidating what Congress, an elected branch, has done in addressing a difficult problem posed by unlawful immigration, the court should have ensured at a minimum that its constitutional ruling would make a difference in the case. And that should be particularly true when the court was addressing a statute dealing with arriving aliens, a topic where judicial power has for more than a century been recognized to be at its weakest.

### Issues Presented

1. Did the district court err in deciding that § 1225(d)(1)(D) is unconstitutional when such a ruling would make no difference to defendant?

2. Is § 1225(d)(1)(D) unconstitutional in precluding review in a § 1326 prosecution of a prior removal order for an arriving alien who has as neither applied for asylum nor claimed persecution abroad?

3. Assuming that a court in a § 1326 prosecution must always declare that a prior removal order for an alien stopped at the border satisfies constitutional due process requirements, is defendant here entitled to dismissal of the § 1326 charge against him here?

### Statement of the Case

Defendant, a citizen of Mexico, attempted to enter the United States illegally five times in a row—on March 4, 1998, March 14, 1998, March 18, 1998, July 26, 1998, and July 28, 1998. A168. Each time, defendant was apprehended by United

States Border Patrol Agents, was allowed to return to Mexico voluntarily, and was not placed in removal proceedings or prosecuted criminally. *Id.*

Thereafter, on an unknown date at an unknown location, defendant successfully and illegally entered the United States. *Id*. While here illegally between 2000 and his present federal prosecution, defendant was convicted of numerous criminal offenses:

- discharging a firearm within the city of Winston-Salem, North Carolina in 2000;

- resisting a public officer in Winston-Salem in 2001;

- identity theft in Chesterfield County, Virginia, in 2008;

- driving while intoxicated in Chesterfield County, Virginia, in 2008;

- driving while intoxicated, 2nd offense, in Chesterfield County in 2009;

- operating a vehicle with no driver's license in Chesterfield County in 2009;

- driving while intoxicated, third offense, in Chesterfield County in 2014;

- unlawful reentry after removal in the Western District of Texas in 2015;

- misuse of a passport in the Western District of Texas in 2015.

A168-69; PSR ¶¶ 26-31.

Defendant has five siblings, three of whom live in Winston-Salem, North Carolina and two of whom live in Cuajinicuilapa, Guerrero, Mexico, and both of his parents live in Cuajinicuilapa, Guerrero, Mexico. PSR ¶¶ 40-47. Defendant also has three children who live in Virginia and were born in the United States. PSR ¶ 50.

Defendant was placed in removal proceedings in 2014 following his release from imprisonment in Virginia for his third DWI conviction. On February 22, 2014, immigration agents had encountered defendant while he was detained at the Chesterfield County, Virginia Jail, and on August 1, 2014, defendant entered ICE custody and was placed in removal proceedings. On September 2, 2014, an immigration judge ordered his removal. A40 (September 2, 2014 removal order). On September 11, 2014, pursuant to an immigration judge's order, defendant was removed to Mexico.

On November 20, 2014, the defendant attempted by fraud to reenter illegally the United States once more at a Texas border crossing point. Defendant claimed to be an arriving citizen by using a fraudulent passport card and alias and falsely stated that he was a United States citizen. A Customs and Border Patrol (CBP) officer detected the multiple frauds, which the defendant then admitted. The defendant was then given standard *Miranda* type warnings and declined to answer

9

further questions without an attorney present.  A42-43 (statement of defendant).  In light of the information that the CBP officer obtained, the officer determined that defendant was an inadmissible alien.  The officer determined that on November 20, 2014, defendant falsely represented himself to be a United States citizen to gain entry into the United States.  Defendant was an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.  A46-47 (Determination of Admissibility).  Defendant was served with a copy of the determination.  A46.  Because of defendant's history of immigration violations and the seriousness of defendant's criminal record, the CBP officer decided to refer the matter to the U.S. Attorney for the Western District of Texas for prosecution.

The U.S. Attorney agreed, and on December 17, 2014, a grand jury returned a two-count indictment, charging violations of unlawful reentry after removal, 8 U.S.C. § 1326, and improperly using another's passport, 18 U.S.C. § 1544. Defendant did not move to dismiss under § 1326(d) the count charging unlawful reentry and never claimed that the underlying removal order of September 2, 2014, was defective.  Rather, on February 4, 2015, with full advice and representation by the Public Defender, defendant pleaded guilty to both counts fully understanding the right to be represented and the immigration consequences of the plea of guilty.

On April 13, 2015, the United States District Court for the Western District of Texas sentenced defendant to concurrent 15-month terms of imprisonment on each count. After serving his sentences, on December 23, 2015, defendant was removed to Mexico. PSR ¶ 31.

But defendant once again illegally reentered the United States at an unknown time and place. A little over a year and a half after his last removal, law enforcement found defendant on August 6, 2017, when Chesterfield County police officers arrested him for "Obstruct Justice: Without Force," "DWI: Previous Felon," and "Driving While Suspended." A173. The next day, officials in the Chesterfield County Jail notified immigration authorities in Richmond, Virginia, that defendant was in their custody, and on September 20, 2017, a grand jury in the Eastern District of Virginia indicted defendant under 8 U.S.C. § 1326(a). *Id.*

Defendant filed a motion to dismiss the indictment pursuant to 8 U.S.C. § 1326(d) arguing that the underlying removal order of November 20, 2014, was invalid. After the district court heard argument on the motion on February 15, 2018, the court concluded that "neither party had squarely addressed" the "relevance of 8 U.S.C. § 1225" to defendant's motion to dismiss. A173-73. The district court's opinion in this case explains, "Holding that [defendant] had 'not adequately raised [the] constitutional challenge … in a way that the Court can decide,' the Court denied the First Motion to Dismiss without prejudice." A174.

11

Defendant then filed a new motion to dismiss, raising the constitutional claim. A10-51. The United States opposed the motion. A52-82. The district court conducted a hearing on the motion on May 11, 2018. A5 (Docket Sheet), 103-61 (Hearing Trans.). At the hearing, defendant acknowledged he bore the burden of proof. A107. Thereafter, the district court issued its ruling, denying the motion to dismiss. First, the court held that 8 U.S.C. § 1225(b)(1)(D) is unconstitutional and that defendant was entitled to a due process review of his prior removal order of November 20, 2014, when he was stopped as an entering alien. Second, the court held that, in conducting that review, defendant failed to establish that he was entitled to relief. A170-201.

At no point did defendant file a motion seeking relief for a discovery violation. The court noted that the United States denied that there was any discovery violation, but the court concluded that "[a] motion to compel discovery is the proper procedural mechanism through which to argue the merits of [defendant's] contention that the United States has failed to turn over discoverable material." A194. Thus, the district "decline[d] to weigh in on a discovery issue improperly presented, as it is, in footnotes of the parties' briefs on the Second Motion to Dismiss." *Id.* The court added that "given the multiple opportunities this Court provided [defendant] to address these issues, [defendant] has waived any right to have this discovery matter considered." *Id*.

After the denial of his motion to dismiss, defendant entered into a conditional guilty plea preserving his right to appeal his motion to dismiss the indictment. A229 (plea agreement provision); 202-226 (guilty plea hearing transcript). The conditional plea did not preserve an unfiled discovery motion, an issue that under this Court's precedent would not be case dispositive and could not be preserved by conditional plea. *United States v. Bundy*, 392 F.3d 641 (4th Cir. 2004). On August 22, 2018, the district court sentenced the defendant to 21 months' incarceration, and defendant timely noted his appeal. A6.

## Summary of Argument

Defendant's motion to dismiss the charge of unlawful reentry under § 1326 should be rejected. Defendant seeks to attack his removal order of November 20, 2014, but he fails to identify any cognizable error in that removal order. The Customs and Border Patrol offers were not required to permit defendant to depart voluntarily, rather than placing him in removal proceedings and referring him for criminal prosecution. Defendant had received numerous times in the past the benefit of a voluntary departure, yet he continued to try to cross the border illegally, and once he did successfully cross the border, he was convicted of multiple crimes in the United States. The officers would have been remiss to allow defendant to continue to depart voluntarily. Nor did defendant have any additional

rights to participate in the decision to place him in removal proceedings.  Nor did he have a right to counsel in such proceedings.

But even if defendant could establish a cognizable due process right that was violated in reaching the removal order of November 20, 2014, defendant cannot show any prejudice.  He cannot show anything that could have happened that would have resulted in the Customs and Border Patrol officers permitting him to depart voluntarily.

Because defendant cannot show any harm from the alleged constitutional violations, this Court need not reach the constitutionality of 8 U.S.C. § 1225(b)(1)(D), which bars review of a removal order like defendant's for an arriving alien.  Basic principles of judicial restraint should lead this Court to avoid reaching the constitutionality of § 1225(b)(1)(D) here.  But if this Court does reach that question, this Court should uphold § 1225(b)(1)(D).  The Supreme Court has long recognized that an alien seeking initial admission to the United States requests a privilege and has no constitutional right to admission.  That authority undermines any claim that an arriving alien possesses a due process right to voluntary departure of the sort defendant claims here or any claim to review of the denial of voluntary departure.

**Argument**

**The district court erred in finding that 8 U.S.C. § 1225(b)(1)(D) is unconstitutional but correctly denied defendant's motion to dismiss the indictment.**

**A.  Standard of Review**

This Court "review[s] a district court's legal conclusions with respect to a motion to dismiss the indictment *de novo*, and its factual findings for clear error." *United States v. Kaixiang Zhu*, 854 F.3d 247, 253 (4th Cir. 2017).

**B.  Analysis**

In *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), the Supreme Court recognized a limited right for an unlawful alien charged with unlawful reentry after removal under 8 U.S.C. § 1326 to challenge the underlying removal order. "If the statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." 481 U.S. at 837.

The aliens in *Mendoza-Lopez* were both found in Lincoln, Nebraska, transported to deportation proceedings in Colorado, and then deported from El Paso, Texas to Mexico. *Id*. at 830. They were not aliens who were stopped at the border, like defendant. When the aliens in *Mendoza-Lopez* returned to the United States and were arrested again in Lincoln, Nebraska and prosecuted under § 1326,

15

they sought to challenge their underlying deportation orders.  During the deportation proceedings, the immigration judge failed "to explain adequately [the aliens'] right to suspension of deportation or their right to appeal."  *Id*. 839.  The Supreme Court concluded, "If the violation of respondents' rights that took place in this case amounted to a complete deprivation of judicial review of the determination, that determination may not be used to enhance the penalty for an unlawful reentry under § 1326."  *Id*. at 840.  But *Mendoza-Lopez* both announced a limited right and did not elaborate on its exact scope.

After *Mendoza-Lopez* was decided, Congress enacted § 1326(d), which provided a limited avenue for a defendant in an unlawful reentry prosecution to attack a prior removal order.  Section 1326(d) provides as follows:

> In a criminal proceeding under this section, an alien may not challenge the validity if the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

In applying § 1326(d), this Court has held that to show that a removal order was "fundamentally unfair" under the third prong in § 1326(d), "a defendant must show both that his 'due process rights were violated by defects in his underlying

16

deportation proceeding' and also that he 'suffered prejudice' as a result." *United States v. Moreno-Tapia*, 848 F.3d 162, 170 (4th Cir. 2017) (quoting *United States v. Lopez-Collazo*, 824 F.3d 453, 460 (4th Cir. 2016); *United States v. El Shami*, 434 F.3d 659, 664 (4th Cir. 2005)).

The prejudice requirement is a stringent one. A defendant "must demonstrate 'that, but for the errors complained of, there was a reasonable probability that he would not have been deported.' This is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue." *Lopez-Collazo*, 824 F.3d at 462 (quoting *El Shami*, 434 F.3d at 665). Moreover, when a defendant fails to show that the prior removal order was fundamentally unfair, such as by failing to show prejudice, this Court need not consider whether the other requirements are met. *Moreno-Tapia*, 848 F.3d at 171.

In addition to enacting § 1325(d), Congress also enacted a limitation on the review provided in § 1326(d) when an unlawful reentry prosecution relies on an earlier removal order for an alien stopped at the border, before entering the United States, who does not claim asylum or to be a victim of persecution. This limitation on § 1326(d) is provided in 8 U.S.C. § 1225(b)(1)(D). Section 1225(b)(1)(D) states as follows:

> In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any

17

claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

In turn, § 1225(b)(1)(A)(i) provides for a limitation on review of the removal of an arriving alien "unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." Section 1225(b)(1)(B)(iii) deals with limitations on review of removal if an alien has no credible fear of persecution. Defendant here was removed as alien stopped at the U.S. border and did not seek asylum or claim a fear of persecution.

As discussed below, defendant's attack on his prior removal order of November 20, 2014 fails for multiple reasons. *First*, this Court need not address the constitutionality of § 1225(b)(1)(D) because any error is harmless. Defendant cannot establish any prejudice from his claims of error in the removal order of November 20, 2014. *Second*, § 1225(b)(1)(D) is constitutional, so defendant's attack on his prior removal when he attempted, but failed, to enter the United States should be rejected under § 1225(b)(1)(D). *Third*, even if § 1225(b)(1)(D) were unconstitutional, and defendant were able to rely on the standards in § 1326(d), his claim must fail again under § 1326(d). Defendant's challenges on appeal must be rejected for other reasons as well, but the three reasons just listed provide the overarching framework.

Because the central issue that runs through all of defendant's claims is the basis for his attack on his removal of November 20, 2014, and why he cannot show

prejudice from those claims of error, the United States will begin by addressing the errors he alleges and his failure to prove prejudice.

**1.** **Defendant fails to show any due process violation in his removal order of November 20, 2014.**

Defendant's claims are premised on his ability to seek at the time of the removal on November 20, 2014, relief that is entirely discretionary.

*a.* *Defendant fails to establish any due process violation.*

The Supreme Court has described the Attorney General's discretionary power to grant a dispensation from deportation as "an act of grace" accorded to his "unfettered discretion," similar to "a judge's power to suspend the execution of a sentence, or the President's to pardon a convict." *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996); *see also Jay v. Boyd*, 351 U.S. 345, 354 (1956). Because no one is entitled to such a discretionary act, an alien has no constitutionally protected liberty or property interest in discretionary relief for purposes of the Due Process Clause. *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167 (9th Cir. 2004); *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003). In addition, not every violation of a regulation rises to the level of a due process violation. *United States v. Caceres*, 440 U.S. 741, 751-52 (1979).

This Court has applied the rule in deportation cases that discretionary decisions do not create due process rights. *Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (citing *Appiah v. INS*, 202 F.3d 704, 709 (4th Cir. 2000)). *See also*

19

*United States v. Estrada*, 876 F.3d 885, 888 (6th Cir. 2017) (discretionary relief does not create a protectable liberty or property interest).

If there is no due process right to relief itself, nor even to review of a request for relief, then presumably there is no due process right to notice about the bare possibility of relief. *United States v. Ramos-Ramirez*, 128 F.Supp.3d 896, 901 (D. Md. 2015). Because this Court has held that suspension of deportation is discretionary relief in which a defendant has no protected right, a defendant cannot establish a protected due process right in being advised of discretionary relief in which there is no protected right. Therefore, defendant cannot show a due process violation based on any alleged failure of the CBP officer to inform of discretionary relief. *United States v. Torres-Medina*, 2018 WL 627114, at *3 (E.D.N.C. 2018). The majority of circuits likewise have held that an alien has no constitutional right to be informed of eligibility for, or to be considered for, discretionary relief. *See United States v. Estrada*, 876 F.3d 885, 888 (6th Cir. 2017); *United States v. Santiago–Ochoa*, 447 F.3d 1015, 1020 (7th Cir. 2006); *Bonhometre v. Gonzales*, 414 F.3d 442, 448 n.9 (3d Cir. 2005); *United States v. Aguirre–Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc); *United States v. Lopez–Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002); *Oguejiofor v. Attorney Gen. of the United States*, 277 F.3d 1305, 1309 (11th Cir. 2002); *Escudero–Corona v. INS*, 244 F.3d 608, 615 (8th Cir. 2001). Defendant's argument therefore fails at the threshold.

### b. The Border Patrol officer did not improperly deny defendant an opportunity to participate.

Defendant claims that a due process violation occurred because allegedly he was not given a chance to participate in the expedited removal order process. The argument fails for a number of reasons. First, defendant does not establish a basis for the claimed "right." Second, defendant's argument is factually wrong. At the point of entry, defendant fully participated and admitted everything establishing the determination of inadmissibility barred from review by §1225(b)(1)(D). Defendant had a further opportunity to answer additional questions but instead declined to continue without an attorney present after the CBP officer gave him *Miranda* rights. Thus, defendant declined to participate by answering the very questions that addressed exceptions to the expedited removal.

### c. The CBP officer did not improperly deny defendant any right to counsel at an inadmissibility and expedited removal determination at a border crossing point.

Defendant has alleged at various stages that he did not have access to counsel. The district court correctly noted that, because removal proceedings are not criminal proceedings, aliens facing removal are not entitled to the Sixth Amendment's right to counsel, the associated right to effective counsel, or the Fifth Amendment's right to effective assistance of counsel during the course of removal proceedings. A189-90 (Mem. Op. at 20-21 n.17)(citing *Afanwi v. Mukasey*, 526 F.3d 788, 796 (4th Cir. 2008); *Cruz v. Holder*, 321 F. App'x 280,

21

281 (4th Cir. 2009); *Massis v. Mukasey*, 549 F.3d 631, 637 (4th Cir. 2008)).

Defendant's counsel agreed, stating "there's no regulation or statutory right to a lawyer." A126.

In *United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011), the Ninth Circuit flatly rejected the argument that in an expedited removal proceeding a lack of counsel could create a procedural error or due process violation:

> Barajas–Alvarado's claim that he was denied his right to counsel, is meritless on its face. Barajas–Alvarado himself identifies no legal basis for his claim that non-admitted aliens who have not entered the United States have a right to representation, and we are aware of no applicable statute or regulation indicating that such aliens have any such right. The cases cited by Barajas–Alvarado involve aliens in the more formal removal proceedings, where the regulations provide a right of counsel, as compared to expedited removal proceedings, where they do not. Cf. 8 C.F.R. § 287.3 (stating that "[e]xcept in the case of an alien subject to ... expedited removal ..., an alien arrested without warrant and placed in formal proceedings ... will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government" (emphasis added)). Because non-admitted aliens are entitled only to whatever process Congress provides, *see Shaughnessy*, 338 U.S. at 544, *Barajas–Alvarado's lack of representation in the removal proceeding did not constitute a procedural error at all, let alone a due process violation*.

*Barajas-Alvarado*, 655 F.3d at 1088 (emphasis added). Defendant's lack of representation in expedited removal at a border-crossing point did not constitute a procedural error at all, let alone a due process violation.

Moreover, because defendant had full consultation and assistance of the Public Defender prior to his removal, he cannot complain that his November 20, 2014 removal order was fundamentally unfair. In his Texas federal prosecution,

22

defendant was represented by the Public Defender. With full assistance of counsel, defendant entered a guilty plea to both counts. In accepting the guilty plea, the court found that defendant had a full understanding of right to legal counsel, as well as the negative effects convictions would have on his immigration removal proceeding. Defense counsel would have to have fully advised defendant of the negative consequences of his guilty plea in the immigration administrative system and that his convictions would no doubt trigger removal. Defendant does not allege any defect in his prior representation by the Public Defender in federal court in Texas, and he should have made any challenge to the Border patrol's decision to refer for prosecution rather than allow withdrawal at that time. After serving his sentence, defendant was processed for removal as he was advised and expected.

As explained above, defendant fails to establish any constitutional due process violation. But suppose that one of the claims above could be classified as a due process violation and that review of the removal order of November 20, 2014, were permitted. Could defendant establish any prejudice from the purported due process violations? As the district court found, the answer to that question is plainly no. Defendant fails completely to establish prejudice, and as discussed below, that failure to establish prejudice should permit this Court to avoid addressing the constitutionality of § 1225(b)(1)(D).

**2. Defendant fails to establish any prejudice from his alleged due process violations because he did not establish a reasonable probability he would have been granted withdrawal of his application for admission.**

Defendant sought to show prejudice by claiming that, but for the alleged errors that he asserts, he would have been granted the right to withdraw his application for admission. The district court correctly found that defendant failed to establish the requisite prejudice to establish fundamental unfairness.

### a. *Defendant bears the burden.*

The district court correctly held it is defendant's burden to show there is a reasonable likelihood the result of the removal proceeding would have been different had the error he might complain of been remedied. *El Shami*, 434 F.3d at 665.[1] *See also Figueroa v. INS*, 886 F.2d 76, 78 (4th Cir. 1989).

Defendant complained that he was not allowed the option of withdrawing his application for entry at the border crossing. But defendant bears the specific burden of demonstrating that, if he been advised of the option, and had he elected

---

[1] Other courts have applied the same rule as this Circuit. *United States v. Zarate-Martinez*, 133 F.3d 1194, 1198-99 (9th Cir. 1998)(requiring different result); *United States v. Loaisiga*, 104 F.3d 484 (1st Cir. 1997); *United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (8th Cir. 1995); *United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994) (defendant must show an appeal would have given him relief from deportation); *United States v. Encarnacion-Galvez*, 964 F.2d 402, 407 (5th Cir. 1992) (no prejudice unless defendant shows "a reasonable likelihood that but for the errors complained of the defendant would not have been deported"); *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir. 1989) (different outcome).

it, he would have been granted the purely discretionary option of withdrawing his highly fraudulent admission application. *United States v. Valdez-Nova*, 780 F.3d 906, 917 (9th Cir. 2015); *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263-64 (9th Cir. 2012). This burden is certainly more than a mere possibility. *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1180 (9th Cir. 2015). As the district court found, defendant neither established that he would have withdrawn his application nor that the CBP officer would have permitted him to withdraw the application.

Neither the expedited removal statute, nor the regulations, require that an immigration officer advise the alien of his opportunity to request withdrawal of his application for admission, subject to the Attorney General's discretion. 8 U.S.C. § 1225(b)(1)(A)(I); 8 C.F.R. § 235.3 (procedures for expedited removal). In this case, defendant suffered no prejudice because he had no plausible grounds for relief in the form of withdrawal of his application for admission.

### b. *Withdrawal of an application for admission is an entirely discretionary process with the CBP officer.*

The district court found that a grant of withdrawal of application rests in the discretion of the Attorney General, and the implementing regulations state that nothing in this section shall be construed to give an alien the right to withdraw his or her application for admission. Thus, defendant had no right to withdraw his application or admission, and withdrawal of his application for admission pursuant

to §1225(a)(4) is entirely discretionary. The implementing regulations provide that "nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission."

Given defendant's four prior voluntary removals, defendant cannot establish a reasonable likelihood that he would have received this withdrawal relief. *See, e.g., United States v. Soto-Garcia*, 2017 WL 991106, at *8 (S.D.Cal. 2017)(one prior removal is enough to cut against the plausibility of receiving permission to withdraw an application for admission).

In addition, the CBP officer's referral of the defendant for prosecution due to his patent fraud establishes that defendant would not have been allowed to withdraw the admission application. The immigration authority's reasonable decision to refer the case to the U.S. Attorney for prosecution was wholly discretionary and shows that defendant would not have been permitted to depart voluntary yet again.[2] Moreover, the referral itself did not confer any greater rights on defendant.[3]

---

[2] This Court has made clear that voluntary departure is not a right, but a benefit. *Dekoladenu v. Gonzales*, 459 F.3d 500, 506 (4th Cir 2006). Certainly the defendant cannot peg a due process claim on that discretionary decision.

[3] Although he was temporarily in the United States for criminal prosecution, an arriving alien remains such even if referred for prosecution and does not become "admitted" or acquire any additional rights or status by virtue of such referral. S*ee Leng May Ma v. Barber*, 357 U.S. 185 (1958).

Given that the criminal case terminated with defendant entering guilty pleas, where defendant had full assistance of the Public Defender, and given defendant's record of criminal convictions and immigration violations, any claim that he would make that he would have been allowed to withdraw his entry application is entirely fanciful, and the circumstances foreclose any such claim now. Courts have found that the fact of the criminal prosecution referral prevents a defendant from arguing any plausible likelihood he would have been granted withdrawal if advised of the option. In *U.S.A. v. Arredondo-Martinez*, 2011 WL 13196331, at *7 (C.D. Cal. 2011), *affirmed*, 492 F. App'x 823 (9th Cir. 2012), the court rejected this argument:

> We find it highly implausible that Defendant's potential request for withdrawal of his application would have been granted once his fraud was discovered but before the criminal prosecution. Inasmuch as the authorities decided to parole Defendant into the country for criminal prosecution, they would not have granted withdrawal of Defendant's application because an immediate departure would have frustrated their very intention to institute criminal proceedings.

*Arredondo-Martinez*, 2011 WL 13196331, at *7 (emphasis added). Just as in *Arredondo-Martinez*, defendant's claim here is highly implausible.

Similarly, in *United States v. Mendoza-Alvarez*, 2013 WL 5741577, at *6 (S.D. Cal. 2013) the court observed that the defendant had five illegal entries after prior removals, as well as prior federal immigration convictions that would weigh strongly against discretionary relief by withdrawal of his application for admission.

The same observation applies equally here. *See also United States v. Grande*, 2013 WL 3190741, *9 (S.D. Cal. 2013) (indicating a "serious" violation, where alien had four illegal entries preceding the entry that led to his expedited removal); *United States v. Segura-Del Real*, 83 F.3d 275, 277-78 (9th Cir. 1996) ("repetitive immigration violations entails greater culpability"); *United States v. Garcia-Gonzalez*, 2013 WL 1562540, *5 (S.D. Cal. 2013) (prior finding of inadmissibility militated against plausibility of withdrawal relief, even if "there [was] a question regarding the validity of that removal").

In a very similar set of factual circumstances of prior voluntary returns, in *United States v. Romero-Caspeta*, 2012 WL 4867708, at *5 (E.D. Mich. 2012), *affirmed*, 744 F.3d 405 (6th Cir. 2014), the court rejected arguments just like defendant's:

> Romero–Caspeta argues the order is fundamentally unfair because he should have been offered "the opportunity to withdraw his application for admission and return back to Mexico without an order issued against him." (Def.'s Mot. Suppress at 6, ECF No. 29). He also argues that the immigration officers did not have reasonable suspicion to arrest him and seize his border card. According to the Complaint used as the basis of the Information, Romero–Caspeta was twice permitted to return to Mexico without an order issued against him. "On March 13, 1999, the Defendant was encountered by the United States Border Patrol at or near Hidalgo, Texas and *granted a voluntary return* back to Mexico." (Compl. at ¶ 4, ECF No. 1). The same instance occurred on March 15, and Romero–Caspeta was again permitted to return to Mexico without any order against him. (*Id.* at ¶ 7). Romero–Caspeta's *argument that he should have been granted a third voluntary return after presenting a fraudulent identification card is meritless. Not only is such relief within the discretion of immigration officials, it is unlikely that such relief would be granted a third time*

28

*involving a false identification. See Barajas–Alvarado,* 655 F.3d at 1090–91.

*Romero-Caspeta*, 2012 WL 4867708, at \*5 (emphasis added). The presentation of false immigration documents is a major factor in this case and again makes any assertion by defendant of entitlement to discretionary relief during his fraudulent attempt to enter the United States highly implausible. *See, e.g., Barajas-Alvarado*, 655 F.3d at 1090 (noting that defendant could not overcome grounds of inadmissibility given deliberate fraud and two prior removal orders); *United States v. Luna-Magdelano*, 533 F. App'x 792, 793 (9th Cir. 2013); *United States v. Arredondo-Martinez*, 2012 WL 5505744, at \*1 (9th Cir. 2012) (because defendant attempted to enter the country using an invalidated resident alien card and a false birth certificate, he cannot show that it is "plausible" that the immigration officer would have exercised his discretion to allow him to withdraw his applications for admission but for the violations of due process); *United States v. Meraz-Olivera*, 472 F. App'x 610, 612 (9th Cir. 2012); *United States v. Lopez-Garcia*, 449 F. App'x 587 (9th Cir. 2011)(fails to "make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor," and permit him to withdraw his application for admission, where he deliberately presented false documents to inspection officers in an effort to gain admission to the United States).

Similarly, in *United States v. Barragan–Camarillo,* 2011 WL 5930388 (9th

Cir. 2011), the Ninth Circuit held that the defendant failed to show prejudice due to lack of counsel and lack of discretionary alternatives to expedited removal:

> Barragan–Camarillo has not made a "'plausible showing that the facts presented would cause the Attorney General to exercise discretion in his favor,' Barragan–Camarillo was detained by immigration officers only two days after returning to Mexico following a previous finding that he was removable; he admitted that he had entered the country illegally; and he was thirty years old and not in poor health-all facts that cut against a grant of withdrawal of an application for admission. These facts also make unlikely a grant of voluntary departure, which is based on a weighing of favorable and unfavorable factors. Moreover, the major benefit for the government of granting voluntary departure—not having to bear the costs of hearings and removal—would not be present here, because Barragan–Camarillo was subject to expedited removal and thus would not have received a hearing, and because he was detained only seven miles from the Mexican border.

*Barragan–Camarillo,* 2011 WL 5930388 at *2.

### c.  *Defendant's argument is not aided by the CBP field manual.*

Defendant cited the CBP field manual to the district court in support of his argument.  But the district court found that the factors in the manual weighed heavily against any finding that defendant would have been granted withdrawal of the application for admission.  A192.  The district court was correct and defendant's counsel conceded that reality at the argument.  *Id*.

### d.  *Defendant did not establish he would even have requested withdrawal of application.*

The district court noted that defendant did not submit any evidence or argument that he knew of the withdrawal option, and defendant did not argue that he was entitled to be advised of the possibility of withdrawal.  A193 (citing *United*

30

*Sates v. Arredondo-Martinez*, 2011 WL 13196331 (C.D.Cal. 2011), *aff'd*, 492 F. App'x 823 (9th Cir. 2012). Courts have ruled that a failure to inform an alien that he might apply for discretionary withdrawal relief in removal proceedings does not render the removal fundamentally unfair, as required for the alien to collaterally attack the removal order in a subsequent prosecution for illegal reentry after removal, because the arriving alien at the border crossing point before being admitted has no due process right to be informed of eligibility for, or to be considered for, discretionary relief. *United States v. De Honta Garcia*, 519 F.3d 698 (7th Cir. 2008). Where, as here, an expedited removal occurs at a port of entry, a CBP officer's failure to inform the alien of his ability to request withdrawal of his application for admission does not violate due process since an alien who has not yet entered this country has no due process rights. *United States v. Sanchez-Aguilar*, 719 F.3d 1108, 1112 (9th Cir. 2013)(citing *United States v. Lopez–Vasquez,* 227 F.3d 476 (5th Cir. 2000)).

> ### e. Defendant cannot meet his burden of showing prejudice by alleging a discovery violation.

The defendant asserts that because of an alleged discovery violation, he should receive a negative inference that certain supposed new standards existed and would have assured defendant the option of withdrawal of his application. The district court correctly rejected the argument. A117-19.

First, as the district court ruled, defendant did not comply with discovery

procedures by seeking a discovery order[4]. The district court held that defendant had not complied with local procedures by filing a motion to compel discovery once told the materials sought were not discoverable, a point that defense counsel acknowledged. J.A. 117-19, 194. The court added that it had given defense counsel multiple opportunities to address the discovery issue now presented, but defendant had failed to seek to litigate the issue, waiving the claim. A118-19, 194.

Moreover, defendant bears the burden of establishing prejudice here, and defendant's argument that he would have been granted withdrawal of his admission application was only speculative and could not meet the burden. A195.

Defendant then entered a guilty plea, and his conditional plea did not preserve a discovery motion that he never filed and that the district court concluded was waived. A conditional guilty plea could not preserve a non-case-dispositive discovery issue, and the conditional plea in this case did not preserve such a claim. *United States v. Bundy*, 392 F.3d 641 (4th Cir. 2004).

To the extent such a claim could be deemed preserved and properly presented to this Court, the claim must be reviewed for abuse of discretion, and defendant fails to satisfy that standard. *See, e.g., United States v. Caro*, 597 F.3d 608, 616 (4th Cir. 2010).

Moreover, defendant's argument is incorrectly based on the assumption that

---

[4] No discovery order was entered in this case. J.A. 1-6 (Docket Sheet).

32

the manuals were discoverable.  Had defendant ever sought to compel production,

defendant's motion would have failed as the materials he now complains about are

not discoverable.  No general right to discovery exists in criminal cases.

*Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Wolf*, 860 F.3d

175, 193 (4th Cir. 2017).  And courts have held that a request for "information

with regards to what aliens are permitted to withdraw their applications, and which

are not" as contained in the manuals is not discoverable under any provision of

Fed.R.Crim.P. 16.  *United States v. Calderon-Jimenez,* 637 F. App'x 295, 297 (9th

Cir. 2016); *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984).  The

manuals do not relate to a trial defense.  *See, e.g., United States v. Chon*, 210 F.3d

990, 995 (9th Cir. 2000) (citing *United States v. Armstrong*, 517 U.S. 456, 462

(1996)).

Defendant even advised the court the field manual materials were not

helpful.  At the hearing, defendant's counsel acknowledged having the field

manual:

> The field manual does say, and I can be frank with the Court, that ordinarily
> in the case of deliberate fraud to effect and entry, relief withdrawal should
> not be granted.  So I think there would have to be outstanding equities
> beyond the usual hardships …, but I think it would have to be something in
> excess of that to counter deliberate fraud under the old pre-2013 standard.

A128-29.  For this reason, defendant's' counsel had advised the court the manual

issue "doesn't quite get us to how to evaluate prejudice."  A118.

Finally, defendant has not even established the sought manual(s) exist. To the contrary, the court in the case cited by defendant noted based on affidavits that the ORT has not been drafted. *American Immigration Lawyers Association v. United States Department of Homeland Security*, 306 F.Supp.3d 162, 164 (D.D.C. 2018). The court found that the only two parts of the ORT that exist list "various policies, memoranda, guides, manuals, musters" and the applicable "laws, regulations and government systems," and neither chapter contains the underlying information but rather provides links to access the documents, websites, or systems. *American Immigration Lawyers Association v. United States Department of Homeland Security*, 306 F.Supp.3d 162, 164 (D.D.C. 2018). Defendant has not made any requisite showing for discovery sanctions concerning non-existent materials.

### f. *Defendant's reference to one alien case is insufficient to show reasonable probability.*

The district court correctly held that defendant's reference to one alien's case was insufficient to show that he would have obtained relief. A196-200. In a more specific attempt to argue that similarly situated aliens do get withdrawal relief, defendant cited one particular person who allegedly received such relief at the border, despite falsely claiming to be a United States citizen and having prior felonies. But even assuming that alien was, in fact, similarly situated to this defendant, this evidence also does not aid this defendant. Proof that "one similarly

situated individual" has received withdrawal relief will not suffice to show prejudice where there is no evidence "at all as to why [he] was allowed to withdraw his application for admission." *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1180 (9th Cir. 2015); *United States v. Soto-Garcia*, 2017 WL 991106, at **5, 7 (S.D. Cal. 2017). In any event, as the district court found as a factual matter, the single documented instance cited by defendant would not be sufficient to meet his burden.

Defendant sought to stretch application of how the categorical approach was applied in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), to argue that a single case would suffice to establish a probability of relief. But this argument was frivolous, as the district court noted, A195-97, and defense counsel effectively acknowledged. A130.

In addition, the district found as a factual matter that the one instance defendant cited differed in important ways from defendant's circumstances. A122, 197. First, the individual had only a single false statement conviction while defendant had been convicted on six misdemeanors and one felony. A121, 168-69. Second, the individual was found while incarcerated, but defendant was found attempting to enter with a false passport, a significant difference. A198. Third, the individual's ties to the United States are unknown, which could significantly affect the likelihood of being allowed to withdraw an application. *See United States v.*

*Raya-Vaca*, 771 F.3d 1195, 1208 (9th Cir. 2014)[5].  For these reasons, the district court concluded as a factual matter that defendant "stood in a meaningfully different position than the cited individual, and could not meet the test in *Duenas-Alvarez*, or *Wilson*.  A197.

3.     **Because defendant fails to establish any prejudice from the alleged due process violations from his removal on November 20, 2014, any constitutional flaw in § 1225(b)(1)(D) is harmless, and this Court should decline to reach the constitutionality of the statute.**

This Court has noted that "the principle of constitutional avoidance … requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary," and that principle applies where "any [asserted constitutional] error was harmless."  *United States v. Reed*, 780 F.3d 260, 269 (4th Cir. 2015) (citation omitted).  "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality … unless such adjudication is unavoidable."  *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944).  "Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."  *Jean v. Nelson*, 472 U.S. 846, 854-55 (1985) (quoting *Gulf Oil Co. v.*

---

[5] The district court also found that the defendant in *Raya-Vaca* distinguishable. A199.  Raya-Vaca did not commit fraud in attempting to enter and had a fairly minimal criminal history of only misdemeanors.  At the hearing, defendant's counsel agreed the *Raya-Vaca* case "is not on all fours with Mr. Villareal."  A120.

*Bernard*, 452 U.S. 89, 99 (1981)).  "This is a 'fundamental rule of judicial restraint.'"  *Id*. (quoting *Three Affiliated Tribes of Berthold Reservation v. Wold Enr'g*, 467 U.S. 138, 157 (1984)).

In this case, given defendant's utter failure to establish any prejudice (from his equally weak claims of error in his removal proceedings), there is no basis for this Court to reach out and address a constitutional challenge to a federal statute. As Thomas Jefferson once said many years ago, "Law is quite overdone."  Letter to David Campbell, January 28, 1810, *Writings of Thomas Jefferson* 5:499-500 (H.A. Washington ed. 1853).  This case should be treated as the routine unlawful reentry prosecution that it is.

The Fifth Circuit followed a similar harmlessness approach to the limitation on review in § 1225(b)(1)(D).  *See United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000) (declining to rule on the constitutionality of § 1225(b)(1)(D) and noting that "section 1225(b)(1)(D) does not preclude the district court or this court from determining that the requisites of a *Mendoza-Lopez* claim as asserted by Lopez-Vasquez are *not* met").  Nearly two decades later, the Fifth Circuit still has found it unnecessary to decide the constitutionality of § 1225(b)(1)(D).

The Ninth Circuit has claimed that *Lopez-Vasquez* implicitly declared § 1225(b)(1)(D) unconstitutional.  *Barajas-Alvarado*, 655 F.3d at 1086 n.9 ("*Lopez-Vasquez* is best read as implicitly holding that § 1225(b)(1)(D) is

unconstitutional"). But that is incorrect. *Lopez-Vasquez* stated, "We do *not* determine whether § 1225(b)(1)(D) … is unconstitutional." 227 F.3d at 486 (emphasis in original). While misreading *Lopez-Vasquez*, the Ninth Circuit went on to declare § 1225(d)(1)(D) unconstitutional in a case where the defendant "failed to show any prejudice resulting from the alleged procedural flaws in the proceedings that resulted in those orders." 655 F.3d at 1079. That ruling was unnecessary.

The district court plainly had jurisdiction over defendant's criminal case under 18 U.S.C. § 3231, and the court reached out to issue a constitutional ruling, invalidating a statute, in adjudicating a defense to criminal prosecution. But harmlessness doctrine provided a straightforward way to reject defendant's defense and respect the fundamental rule of judicial restraint. And as discussed next, the district court reached to invalidate a statute in an area where judicial review is at its weakest.

4. **Section 1225(b)(1)(D) is constitutional and bars review of defendant's removal order on November 20, 2014.**

The Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (citations omitted). *See also Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) ("For more than a century, this Court has

recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'") (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). *See also Mathews v. Diaz*, 426 U.S. 67, 81 (1976); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–589 (1952).

### a. The determination of inadmissibility, and expedited removal at a border crossing point for arriving persons is a unique, distinct immigration process.

An expedited removal proceeding under 8 U.S.C. §1225, applicable here to an "arriving person," as "applicants for admission," allows immigration officers to determine inadmissibility, and enter removal orders without hearing or further review. During an expedited removal proceeding at the border for an arriving alien, making a material misrepresentation to gain admission into the United States, falsely representing oneself to be a United States citizen, or not possessing a "valid entry document" are bases for exclusion. 8 U.S.C. § 1225(a)(3), (b)(1)(A)(i); § 1182(a)(6)(C)(i), (a)(6)(c)(ii)(I), (a)(7)(A)(i).[6] If the officer determines the alien to be inadmissible, the officer shall order the alien removed from the United States without further hearing or review.

As the Supreme Court has explained, "an alien seeking initial admission to

---

[6] These are not unusual provisions. The INA contains many basis for denying admission. *Trump*, 138 S. Ct. at 2407.

the United States requests a privilege and has no constitutional rights regarding his admission, for the power to admit or exclude aliens is a sovereign prerogative." *Landon*, 459 U.S. at 32 (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950), and *Nishimura Ekiu v. United States*, 142 U.S. 651, 659-60 (1892)). "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Knauff*, 338 U.S. at 544; *Zadvyas v. Davis*, 533 U.S. 678, 682-83 (2001); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 600 (1953). And for "purposes of the immigration laws, moreover, the legal incidents of an alien's entry remain unaltered whether he has been here once before or not." The unique circumstances of a fraudulent attempted entry by an arriving alien, with no due process rights attaching, bars review of defendant's claims here.

### b. *8 U.S.C. §1225(b)(1)(D) bars a district court from review of the denial of an alien's fraudulent border entry.*

Section 1225(b)(1)(D) clearly bars courts exercising jurisdiction to consider a collateral attack on a border point expedited removal order. Section 1225(b)(l)(D) provides:

> Limit on collateral attacks—In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

8 U.S.C. § 1225(b)(l)(D). Further, § 1225(b)(A)(i), provides:

> If an immigration officer determines that an alien … who is arriving in the United States … is inadmissible under section 1182(a)(6)(C) or 1182(a)(7)

40

of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

8 U.S.C. § 1225(b)(A)(l). Under these sections, courts do not have jurisdiction to consider the defendant's collateral attacks here when he was found inadmissible.

The language of 8 U.S.C. § 1225(b)(1)(D) barring review jurisdiction over border point expedited removals is clear and unambiguous.

Congress knew what it was doing when it passed 8 U.S.C. §1225(b)(1)(D). At the same time Congress passed this jurisdiction-stripping provision in 1996, Congress also codified the rule in *Mendoza-Lopez* that, under certain circumstances, § 1326 defendants who were already in the country had a due process right to collaterally attack their prior deportations if three requirements were met. It is a long-standing rule of statutory construction that where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984).

In finding § 1225(b)(1)(D) unconstitutional, the district court did not disturb the limitations on arriving aliens' right to review, but the court held that, in the context of a criminal prosecution under § 1326. But the district court in relying on *Mendoza-Lopez*, the district court erroneously presupposed constitutional rights for an arriving alien that do not exist and then claimed a constitutional right in a

41

criminal prosecution for vindicating those nonexistent rights.

*Mendoza-Lopez* concerned aliens in a significantly different posture than aliens at an entry point. The difference between defendant's immigration standing at time of expedited removal when arriving at the border, and the standing of the defendants in *Mendoza-Lopez* who had already entered the country before apprehension is crucial, and controls the analysis here.

Defendant here was removed following denial of his fraudulent application for admission to the United States at a border crossing point and before admission to the country. Accordingly, the defendant never entered the United States at the time of his expedited removal. The Supreme Court has long held that there is a fundamental difference between aliens who are attempting to enter the United States and aliens already within the United States, and the Due Process Clause of the Constitution does not apply to "arriving" aliens.

The distinction between an alien who has effected an entry into the United States and one who has never entered runs through immigration law. *See Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (despite nine years' presence in the United States, an excluded alien was still in theory of law at the boundary line and had gained no foothold in the United States. It is well-established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside our geographic borders. *See, e.g., United States v. Verdugo-Urquidez*, 494

42

U.S. 259, 269 (1990) (Fifth Amendment's protections do not extend to aliens outside the territorial boundaries); *Zadvydas v. Davis*, 533 U.S. 678, 692-93 (2001) (some citations omitted); *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 175 (1993); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). Congress's power over this topic is broad. *Duldulao v. INS*, 90 F.3d 396, 399-400 (9th Cir. 1996). *Cf. Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

*Mendoza-Lopez* and subsequent cases and statutes predicated upon it should be deemed to apply only to aliens already within the United States. *Cf. Lopez-Vasquez*, 227 F.3d at 484 (discussing *Mendoza-Lopez*, concluding that an alien on the threshold of initial entry stands on a different footing, but declining ultimately to decide constitutionality of § 1225(b)(1)(D).)

Drawing a distinction between arriving aliens and those already here makes sense. Both *Mendoza-Lopez* and 8 U.S.C. § 1326(d) make explicit reference to due process violations being a necessary predicate to a collateral attack. Because an arriving alien had no due process rights at the time of the alien's expedited removal at the border, by definition, the alien cannot collaterally attack his removal under *Mendoza-Lopez* and § 1326(d). Congress, recognizing this, appropriately prohibited such collateral attacks in § 1225(b)(1)(D), barring review of the expedited removal order entered at the border here.

43

In *Barajas-Alvarado*, the Ninth Circuit held 8 U.S.C. §1225(b)(l)(D) unconstitutional to the extent that it deprived defendants of "some meaningful review" of prior deportation orders for aliens not yet in the country.

But in the context of deportation of arriving aliens, the Supreme Court has repeatedly affirmed the constitutionality of limits on the courts' jurisdiction for almost as long as there have been federal immigration laws.

Similarly, except for the Ninth Circuit, the majority of courts that have addressed the limitation of judicial review under § 1252 (regarding habeas review of § 1225(b)(1) expedited removal orders) have held that § 1252 deprives the courts of jurisdiction to hear claims related to the implementation or operation of an expedited removal order, especially where an alien sought to enter the country through fraud or misrepresentation. The majority of courts' holdings, barring habeas jurisdiction to review the validity of expedited removal orders, apply with force here.

This Court's decision in *Hall v. U.S. I.N.S.*, 167 F.3d 852, 857 (4th Cir. 1999), is instructive. The Court examined a restriction on an alien's appeal rights, finding the review restriction appropriate and constitutional. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, Div. C, 110 Stat. 3009–546, precluded judicial review of Hall's deportation order based on certain criminal convictions. In *Hall*, the provision

44

applicable directed that an alien who commits a firearms offense covered by INA § 241(a)(2)(C) is deportable and is entitled to "no appeal." This Court has held that the IIRIRA removed its jurisdiction over the appeals of those aliens who are deportable by reason of their conviction of certain offenses. *Hall*, 167 F.3d at 854. In so ruling, this Court rejected a constitutional challenge to the restriction on the appellate court's jurisdiction:

> To the extent that Hall is claiming that the Constitution compels this court to examine the facts underlying his conviction, he is incorrect. The Supreme Court has long said in the immigration context that Congress is generally free to leave final fact finding in the executive branch. *See Carlson v. Landon*, 342 U.S. 524, 537–38 (1952) ("The power to expel aliens, being essentially a power of the political branches of government, ... may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit." (internal quotation marks omitted)); see also *Yang*, 109 F.3d at 1196–97; *Boston–Bollers v. INS*, 106 F.3d 352, 355 (11th Cir.1997); *Duldulao v. INS*, 90 F.3d 396, 400 (9th Cir. 1996). Consequently, IIRIRA's removal of our authority to review the facts underlying Hall's petition does not pose a constitutional problem.

*Hall*, 167 F.3d at 857. *See also Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 490 (4th Cir. 1999) (lack of jurisdiction applying *Hall*); *Lewis v. U.S. I.N.S.*, 194 F.3d 539, 547 (4th Cir. 1999)(same).

Finally, if this Court were to conclude that § 1225(b)(1)(D) is unconstitutional, then defendant could not satisfy § 1326(d) for the reasons already discussed above. He cannot satisfy his burden of showing that the removal order of November 20, 2014, was fundamentally unfair.

45

## Conclusion

For the foregoing reasons, this Court should affirm defendant's convictions and sentence.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

_____/s/_____
Richard D. Cooke
S. David Schiller
Assistant United States Attorneys

## Statement Regarding Oral Argument

The district court ruled, incorrectly in the United States' view, that a statute enacted by Congress, 8 U.S.C. § 1225(b)(1)(D), is unconstitutional.  An appeal of such a ruling warrants oral argument.  But in this case the district court also found that § 1225(b)(1)(D) made no difference in this case, and the district court's ruling on that question is correct, straightforward, and not close.  Because any ruling about the constitutionality of § 1225(b)(1)(D) is harmless, this Court need not reach the constitutional question, as the Fifth Circuit has found in similar circumstances, leaving this case as a routine, valid prosecution for unlawful reentry under 8 U.S.C. § 1326.

## Certificate of Compliance

I certify that I wrote this brief using 14-point Times New Roman typeface and Microsoft Word 2010.

I further certify that this brief does not exceed 13,000 words (and is specifically 10,915 words) as counted by Microsoft Word, excluding the table of contents, table of citations, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____
Richard D. Cooke
Assistant United States Attorney

## Certificate of Service

I certify that on January 28, 2019, I filed electronically the foregoing brief with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

By: _____/s/_____
Richard D. Cooke
Assistant United States Attorney
Eastern District of Virginia
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-5400
richard.cooke@usdoj.gov